**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50129 |
| *Plaintiff-Appellee*, | D.C. No. 3:20-cr-02914-LAB-1 |
| v. | |
| CYNTHIA LEON MONTOYA, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted En Banc March 22, 2023
Pasadena, California

Filed September 13, 2023

Before: Mary H. Murguia, Chief Judge, and Johnnie B.
Rawlinson, Sandra S. Ikuta, Morgan Christen, Jacqueline
H. Nguyen, Michelle T. Friedland, Ryan D. Nelson, Daniel
P. Collins, Gabriel P. Sanchez, Holly A. Thomas and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Ikuta;
Dissent by Judge Collins

## SUMMARY[*]

### Criminal Law

Affirming in part and vacating in part a sentence imposed on Cynthia Montoya, and remanding, the en banc court held that a district court must orally pronounce all discretionary conditions of supervised release, including those referred to as "standard" in U.S.S.G. § 5D1.3(c), in order to protect a defendant's due process right to be present at sentencing.

In so holding, the en banc court overruled in part the opinion in *United States v. Napier*, 463 F.3d 1040 (9th Cir. 2006).

The en banc court further held that the pronouncement requirement is satisfied if the defendant is informed of the proposed discretionary conditions before the sentencing hearing and the district court orally incorporates by reference some or all of those conditions, which gives the defendant an opportunity to object.

The en banc court vacated only the conditions of Montoya's supervised release that were referred to as the "standard conditions" in the written sentence but were not orally pronounced. The en banc court remanded for the limited purpose of allowing the district court to cure its error by orally pronouncing any of the standard conditions of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

supervised release that it chooses to impose and by giving Montoya a chance to object to them.

Judge Collins dissented. He wrote that in setting new rules about how federal sentencings should be conducted, the majority misapplies the due process principles on which its decision is based, casts doubt on the validity of a potentially large number of criminal sentences, and sows confusion about what exactly district courts must do, going forward, to comply with the majority's ruling.

---

**COUNSEL**

James T. Dawson (argued) and Jeremy C. Marwell, Vinson & Elkins LLP, Washington, D.C.; Kent D. Young, Law Offices of Kent D. Young, San Diego, California; Michael A. Heidler, Vinson & Elkins LLP, Austin, Texas; for Defendant-Appellant.

D. Benjamin Holley (argued) and Oleksandra Johnson, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief, Criminal Division; Randy S. Grossman, Acting United States Attorney; United States Attorney's Office, San Diego, California, for Plaintiff-Appellee.

Vincent J. Brunkow, Federal Defenders of San Diego Inc., San Diego, California, for Amicus Curiae Federal Defenders of San Diego Inc.

## OPINION

IKUTA, Circuit Judge:

Cynthia Leon Montoya appeals her sentence on the ground that her due process rights were violated when the district court failed to pronounce certain discretionary conditions of supervised release in her presence. We hold that a district court must orally pronounce all discretionary conditions of supervised release, including those referred to as "standard" in § 5D1.3(c) of the United States Sentencing Guidelines Manual (Guidelines), in order to protect a defendant's due process right to be present at sentencing.[1] In so holding, we overrule in part our opinion in *United States v. Napier*, 463 F.3d 1040 (9th Cir. 2006), and join the similar conclusions of five of our sister circuits.

I

In August 2020, U.S. Customs and Border Protection (CBP) arrested Montoya for smuggling drugs into the United States from Mexico via the San Ysidro Port of Entry in San Diego. When arrested, Montoya had 4.4 kilograms of cocaine strapped to her back. Her 15-year-old son, who was traveling with her, had 5.02 kilograms of methamphetamine strapped to his body. Montoya admitted to the CBP officers that she had been offered $4,000 to smuggle the drugs into the United States, that she was aware her son had drugs strapped to him, and that she had successfully smuggled drugs across the border on several previous occasions.

---

[1] U.S. SENT'G GUIDELINES MANUAL § 5D1.3(c) (U.S. SENT'G COMM'N 2018) [hereinafter U.S.S.G.].

Montoya pleaded guilty to two counts of knowingly and intentionally importing 500 grams or more of cocaine and methamphetamine into the United States, in violation of 21 U.S.C. §§ 952 and 960. The presentence report stated that a five-year term of supervised release after Montoya's custodial sentence was "required and recommended." As part of the term of supervised release, the presentence report recommended "[t]hat the defendant abide by the mandatory and standard conditions of supervision," as well as four additional conditions set forth in full in the presentence report. At Montoya's sentencing hearing, after considering the factors set forth in 18 U.S.C. § 3553(a), the district court accepted Montoya's guilty plea and imposed a sentence of 100 months' imprisonment plus five years of supervised release. The district court orally imposed four conditions of supervised release that were consistent with the four additional conditions set forth in the presentence report.[2] In its written judgment, the court included both the mandatory conditions of supervised release required by 18 U.S.C. § 3583(d) and the "standard" conditions of supervised release recommended in § 5D1.3(c) of the Guidelines.[3]

On appeal, Montoya argues that the district court violated her due process right to be present at sentencing by

---

[2] Montoya was: (1) "not to go into Mexico, except for visitation of relatives," without permission from the probation officer, and no visit could "exceed a period of four days"; (2) "to participate in a program of mental health treatment, [and] take all medications prescribed by a psychiatrist or a physician"; (3) "to tell the probation officer about all automobiles she owns or drives"; and (4) "subject to a search of her person, her property, her residence, and her vehicle by the probation officer."

[3] *See infra* pp. 10–13.

not orally pronouncing the standard conditions of supervised release set forth in § 5D1.3(c) in her presence during the sentencing hearing.[4]    A three-judge panel rejected Montoya's argument. *United States v. Montoya*, 48 F.4th 1028 (9th Cir.), *reh'g granted and opinion vacated*, 54 F.4th 1168 (9th Cir. 2022).  We agreed to rehear this case en banc to reconsider our rule that the standard conditions of supervised release need not be orally pronounced as part of sentencing.[5]  *See Napier*, 463 F.3d at 1043.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We review de novo the legality of a sentence, *see United States v. Avila-Anguiano*, 609 F.3d 1046, 1049 (9th Cir. 2010), including the question whether the court made a legal error in imposing a condition of supervised release, *see United States v. Wells*, 29 F.4th 580, 583 (9th Cir. 2022).[6]  We reject the government's argument

---

[4] Montoya abandoned her challenges to her guilty plea at oral argument on rehearing en banc.

[5] Montoya raises two additional challenges to her sentence.  First, she argues that the district court did not properly consider and explain its reasons for rejecting her requests for variances for imperfect duress and her mental health conditions.  Second, she argues that her sentence was substantively unreasonable because it failed to account for her lack of criminal history, and overemphasized the need for deterrence and the seriousness of the offense.  The three-judge panel addressed and rejected these arguments.  *See Montoya*, 48 F.4th at 1037–38.  We agree with the three-judge panel's reasons for rejecting these arguments, and we adopt them as our own.  *See United States v. Swisher*, 811 F.3d 299, 304 n.3 (9th Cir. 2016) (en banc).

[6] Because Montoya claims that the district court's failure to make an oral pronouncement of the standard conditions of supervised release imposed in her written sentence violated her due process rights, but does not assert that the substance of any particular supervised release condition was improper, we review her claim de novo, not for abuse of discretion.  *See*

that Montoya forfeited her challenge to the district court's failure to make an oral pronouncement of the standard conditions of supervised release by not objecting during the sentencing hearing. Because Montoya did not know that the district court intended to impose the standard conditions of supervised release until after she received the written judgment, Montoya did not have "any real opportunity to object" to the district court's failure to make an oral pronouncement of those conditions during the sentencing proceedings. *United States v. Reyes*, 18 F.4th 1130, 1134 (9th Cir. 2021) (quoting *United States v. Blueford*, 312 F.3d 962, 974 (9th Cir. 2002)). Although the presentence report recommended that Montoya abide by the standard conditions of supervision, the district court did not adopt that recommendation during the sentencing hearing, leaving Montoya unaware as to whether it would impose one or more standard conditions. In light of the court's silence, we do not review Montoya's challenge to the imposition of those conditions for plain error. *See* FED. R. CRIM. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party."); *see also United States v. Mancinas-Flores*, 588 F.3d 677, 686 (9th Cir. 2009) ("[A]n objection is required only if the court affords a party the opportunity to make one.").

---

*United States v. Langley*, 17 F.4th 1273, 1274 (9th Cir. 2021) (per curiam) ("We review the conditions of supervised release imposed by a district court for an abuse of discretion, and review de novo whether a supervised release condition violates the Constitution." (citations and quotation marks omitted)).

## II

We first consider the scope of a defendant's right to be present for the oral pronouncement of conditions of supervised release.

### A

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *see also Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006) (defining a "critical stage" as "any 'stage of a criminal proceeding where substantial rights of a criminal accused may be affected'" (quoting *Mempa v. Rhay*, 389 U.S. 128, 134 (1967))). Although "[t]he constitutional right to presence [during a critical stage of a criminal proceeding] is rooted to a large extent in the Confrontation Clause of the Sixth Amendment," the Supreme Court has recognized that in situations "where the defendant is not actually confronting witnesses or evidence against him," the right to presence "is protected by the Due Process Clause." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam).

While the right to be present is "an essential condition of due process," *Snyder v. Massachusetts*, 291 U.S. 97, 119 (1934), it is not absolute. In *Snyder*, the Supreme Court rejected a defendant's argument that he had a right to be present when the jury viewed the scene of the crime. *Id.* at 108. The Court explained that, although the defendant may have a right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," *id.* at 105–06, the defendant has no right to be present "when presence would be useless, or the benefit but a shadow," *id.*

at 106–07. Therefore, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* at 107–08.

The due process right to be present applies to sentencing because "sentencing is a critical stage of the criminal proceeding" and the sentencing process "must satisfy the requirements of the Due Process Clause."[7] *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (plurality opinion). "After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair." *Betterman v. Montana*, 578 U.S. 437, 448 (2016). Because

---

[7] The Supreme Court has not directly addressed the constitutional basis for a defendant's right to be present during sentencing, and the circuits are split on the basis for this right. *Compare United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020) (en banc) (Due Process Clause), *with United States v. Ferrario-Pozzi*, 368 F.3d 5, 8 (1st Cir. 2004) (Confrontation Clause), *and United States v. Townsend*, 33 F.3d 1230, 1231 (10th Cir. 1994) (same). We have likewise been inconsistent. *Compare Hays v. Arave*, 977 F.2d 475, 476 (9th Cir. 1992) (Due Process Clause), *overruled on other grounds by Rice v. Wood*, 77 F.3d 1138, 1144 n.8 (9th Cir. 1996) (en banc), *with Napier*, 463 F.3d at 1042 (Confrontation Clause), *and United States v. Aguirre*, 214 F.3d 1122, 1125 (9th Cir. 2000) (same). We now hold that, under the Supreme Court's reasoning in *Gagnon*, the right to be present at proceedings that lack testimony, which includes most sentencings, comes from the Fifth Amendment's Due Process Clause. *See* 470 U.S. at 526–27. Nevertheless, in those rare instances where a sentencing proceeding includes evidence or witness testimony, *see* FED. R. CRIM. P. 32(i)(2), the right to be present may also be protected by the Confrontation Clause. *See United States v. Braman*, 33 F.4th 475, 479–80 (8th Cir. 2022). To the extent our precedent is to the contrary, it is overruled. Because neither evidence nor witnesses were introduced at Montoya's sentencing, we must determine whether her due process rights were violated.

the vast majority of prosecutions culminate in guilty pleas, sentencing is "frequently the most important part of the criminal proceeding" for the defendant, and indeed is often the only part "in which the individual and the state disagree about the proper outcome." *Hays*, 977 F.2d at 479.

A "sentence is imposed at the time it is orally pronounced." *Aguirre*, 214 F.3d at 1125; *see also* FED. R. CRIM. P. 35(c) ("'[S]entencing' means the oral announcement of the sentence."). For this reason, "if there is a conflict between the sentence orally imposed and written judgment, the oral pronouncement, as correctly reported, controls," *Aguirre*, 214 F.3d at 1125, because "[t]he only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant," *United States v. Munoz-Dela Rosa*, 495 F.2d 253, 256 (9th Cir. 1974) (per curiam). Because sentencing is a critical stage that occurs at the time the sentence is orally pronounced, the right to be present at sentencing means that the defendant must be physically present when the sentence is orally pronounced. *See Aguirre*, 214 F.3d at 1125; *see also* FED. R. CRIM. P. 43(a)(3).

Sentencing typically involves the imposition of a term of supervised release.**[8]** *See* 18 U.S.C. § 3583(a) (providing that a court "may include . . . a term of supervised release" as part of the sentence, but "shall" impose such a term if required by statute). "Supervised release is 'a form of

---

[8] Nearly three quarters (72.9%) of the defendants convicted of federal crimes are sentenced to a term of supervised release. U.S. SENT'G COMM'N, 2020 ANNUAL REPORT AND SOURCEBOOK OF FEDERAL SENTENCING STATISTICS, at tbl. 18 (2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/Table18.pdf [https://perma.cc/NA3T-BK5G].

postconfinement monitoring' that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison." *Mont v. United States*, 139 S. Ct. 1826, 1833 (2019) (quoting *Johnson v. United States*, 529 U.S. 694, 697 (2000)); *see* 18 U.S.C. § 3583(a). Both "the terms and conditions of supervised release are a part of the [defendant's] sentence." *United States v. Paskow*, 11 F.3d 873, 882 (9th Cir. 1993).

If a court imposes a term of supervised release, it is required to impose certain mandatory conditions. *See* 18 U.S.C. § 3583(d). Under § 3583(d), courts "*shall* order, as an explicit condition of supervised release," that all defendants: (1) not commit another federal, state, or local crime; (2) pay any remaining restitution; (3) not unlawfully possess a controlled substance; (4) submit to a drug test within 15 days of release and at least two periodic drug tests thereafter; and (5) cooperate in the collection of a DNA sample.[9] *Id*. (emphasis added).[10]

A court may also impose discretionary conditions of supervised release that "it considers to be appropriate." *Id*. District courts "enjoy broad discretion in fashioning the conditions needed for successful supervision of a defendant," but their discretion remains "subject to three primary constraints." *United States v. LaCoste*, 821 F.3d 1187, 1190 (9th Cir. 2016). "First, the condition must be

---

[9] The drug test condition "may be ameliorated or suspended by the court" under certain circumstances. 18 U.S.C. § 3583(d).

[10] Section 3583(d) also lists additional mandatory conditions for defendants convicted of particular crimes. First-time domestic violence offenders must attend a court-approved rehabilitation program, and convicted sex offenders must comply with the requirements of the Sex Offender Registration and Notification Act. 18 U.S.C. § 3583(d).

reasonably related to the nature and circumstances of the offense; the history and characteristics of the defendant;" or the goals of just punishment, "deterrence, protection of the public, or rehabilitation." *Id.* at 1190–91; *see* 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), (a)(2)(A)–(D); *United States v. Napulou*, 593 F.3d 1041, 1044 (9th Cir. 2010). Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary" to serve the goals of supervised release. 18 U.S.C. § 3583(d)(2). And finally, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission."[11] *Id*. § 3583(d)(3); *LaCoste*, 821 F.3d at 1191.

The Guidelines give district courts guidance for imposing appropriate conditions of supervised release. *See* U.S.S.G. § 5D1.2 (Term of Supervised Release); *id.* § 5D1.3 (Conditions of Supervised Release). In addition to discussing mandatory conditions that are required by statute, *id.* § 5D1.3(a), the Guidelines provide three different lists of discretionary conditions: thirteen "standard" conditions that "are recommended for supervised release," *id.* § 5D1.3(c); eight "special" conditions that "may otherwise be appropriate in particular cases," *id*. § 5D1.3(d); and six "additional" conditions that "may be appropriate on a case-by-case basis," *id*. § 5D1.3(e).[12] The Guidelines also clarify

---

[11] Section 3583(d) sets forth additional discretionary conditions of supervised release applicable to specified types of defendants.

[12] The "standard" conditions of supervised release state that a defendant shall: (1) "report to the probation office in the federal judicial district where he . . . is authorized to reside within 72 hours of release from imprisonment"; (2) report to the probation officer as instructed; (3) "not knowingly leave the federal judicial district where he . . . is authorized to reside without first getting permission from the court or the probation officer"; (4) "answer truthfully the questions asked by the probation

that a district court "may impose other" discretionary conditions of supervised release. *Id*. § 5D1.3(b).

Because a defendant has a right to be present at sentencing "to the extent that a fair and just hearing would be thwarted by his absence," *Snyder*, 291 U.S. at 108, it follows that a defendant has the right to be present during the oral pronouncement of conditions of supervised release to the extent "his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against" the condition, *id*. at 105–06.

A defendant's due process right to be present at a critical stage is not violated if the district court imposes mandatory conditions of supervised release only in the written judgment. *See Napier*, 463 F.3d at 1043. Because these conditions are required under 18 U.S.C. § 3583(d), a defendant cannot defend against them, *see Diggles*, 957 F.3d

---

officer"; (5) "live at a place approved by the probation officer"; (6) "allow the probation officer to visit the defendant at any time at his . . . home or elsewhere," and "permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that [the probation officer] observes in plain view"; (7) "work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so"; (8) "not communicate or interact with someone the defendant knows is engaged in criminal activity"; (9) notify the probation officer within 72 hours if the defendant is arrested or questioned by a law enforcement officer; (10) "not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon"; (11) "not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court"; (12) comply with an instruction by the probation officer to notify another person (including an organization), if the probation officer determines that the defendant poses a risk to that person; and (13) "follow the instructions of the probation officer related to the conditions of supervision." U.S.S.G. § 5D1.3(c).

14                         USA v. MONTOYA

at 558, and so a defendant's presence during the oral pronouncement of mandatory conditions "would be useless, or the benefit but a shadow," *Snyder*, 291 U.S. at 106–07.**[13]**

The situation is different when a court imposes a condition that is not mandated by 18 U.S.C. § 3583(d) and is thus discretionary. Because district judges enjoy "wide latitude" to impose non-mandatory conditions of supervised release, *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006), which is constrained only by the requirements of 18 U.S.C. § 3583(d)(1)–(3), the defendant has a due process right to be present to defend against them, *Snyder*, 291 U.S. at 105. Unless present when these conditions are pronounced, a defendant cannot "dispute whether [the condition] is necessary or what form it should take." *Diggles*, 957 F.3d at 558. Defendants sentenced in absentia are denied "their best chance to oppose [a] supervised-release condition[] that may cause them unique harms," *United States v. Rogers*, 961 F.3d 291, 298 (4th Cir. 2020), or even to flag "inaccurate statements" or assist their counsel "in making strategic choices" on how to challenge a given condition, *Hays*, 977 F.2d at 480 n.7. Therefore, a district court's failure to pronounce discretionary conditions of supervised release violates a defendant's due process right to be present at a critical stage of the criminal proceedings. *See Campbell v. Rice*, 408 F.3d 1166, 1171 (9th Cir. 2005) (en banc).

---

[13] *Snyder* made clear that while a court may regulate the procedures of a criminal proceeding, due process requires that it give a defendant "notice of the charge and an adequate opportunity to be heard in defense of it." 291 U.S. at 105. In this context, a defendant has "notice [that] he was subject to . . . mandatory conditions because they appear in § 3583(d)." *United States v. Anstice*, 930 F.3d 907, 909 (7th Cir. 2019).

A defendant's right to be present for the imposition of a condition of supervised release to which a defendant could raise a defense applies to *any* condition imposed by the district court that is not mandated by statute, without regard to whether the Guidelines label this condition "standard" under § 5D1.3(c) or "special" under § 5D1.3(d). Although the "standard" conditions might be "boilerplate" in form, *Napier*, 463 F.3d at 1043, the district court retains full discretion over the decision to impose them, subject only to the requirements of 18 U.S.C. § 3583(d)(1)–(3), based on its individualized assessment of the defendant. *See United States v. Matthews*, 54 F.4th 1, 6 (D.C. Cir. 2022) ("[N]o matter how commonsensical the standard conditions may seem, the governing statute classifies them as discretionary . . . ."); *see also Anstice*, 930 F.3d at 910 ("As commonplace and sensible as these . . . conditions may be across federal sentences, Congress has not mandated their imposition.").

We previously took a different view, holding that district courts need not orally pronounce the standard conditions of supervised release set forth in § 5D1.3(c) when sentencing a defendant. *See Napier*, 463 F.3d at 1043. In *Napier*, the district court accepted a defendant's guilty plea and sentenced him to nine months in prison and three years of supervised release. *Id*. at 1042. At the sentencing hearing, the district court stated that "[t]he terms and conditions of final release will be provided in a final judgment in this case," but "summarized the effect of some of the 'standard' conditions of supervised release that are recommended by [U.S.S.G.] § 5D1.3(c) for imposition in every case." *Id.* "After the [sentencing] hearing, the court issued a written judgment that included not only the standard conditions, but also six nonstandard conditions of supervised release." *Id*.

Although we held "that the district court erred when it included in the written judgment nonstandard conditions of supervised release without first announcing those conditions as part of [the defendant's] oral sentence," *id*., we also held that this rule did not apply either to conditions that were mandatory under § 3583(d), or conditions "recommended by the Guidelines as standard, boilerplate conditions of supervised release" under § 5D1.3(c), *id.* at 1043. We reasoned that the standard conditions "are sufficiently detailed that many courts find it unnecessarily burdensome to recite them in full as part of the oral sentence," and concluded that "imposition of these mandatory and standard conditions is deemed to be implicit in an oral sentence imposing supervised release." *Id*. Therefore, we held that "[w]hen those standard conditions are later set forth in a written judgment, the defendant has no reason to complain that he was not present at this part of his sentencing because his oral sentence necessarily included the standard conditions." *Id.*

As we have explained, *Napier*'s conclusion is wrong because it is based on an incorrect premise. Contrary to *Napier*'s statement that standard conditions of supervised release are "necessarily included" in an oral sentence, *id*., the Guidelines make them entirely discretionary, and therefore the defendant (if present when they were pronounced) could defend against them, *see Snyder*, 291 U.S. at 105. The standard conditions are thus analogous to what *Napier* referred to as "nonstandard" conditions, which had to be announced as part of the defendant's oral sentence. 463 F.3d at 1041–42. We therefore overrule *Napier* to the extent it held that a district court need not orally pronounce the standard conditions recommended by § 5D1.3(c) at the sentencing hearing.

In reaching this conclusion, we join five of our sister circuits in holding that, for purposes of determining whether a defendant has a due process right to be present for sentencing (specifically, for the oral pronouncement of a condition of supervised release), what matters is whether a condition is mandatory or discretionary under 18 U.S.C. § 3583(d). *See United States v. Geddes*, 71 F.4th 1206, 1215 (10th Cir. 2023); *Matthews*, 54 F.4th at 6; *Rogers*, 961 F.3d at 296–97; *Diggles*, 957 F.3d at 558–59; *Anstice*, 930 F.3d at 910. If a condition is mandatory, then a defendant need not be present for its oral pronouncement. If a condition is discretionary, the district court must orally pronounce it in the presence of the defendant, without regard to how it is classified by the Guidelines. This bright-line rule ensures that a defendant's right to be present at sentencing is protected and more faithfully adheres to the text of § 3583(d).

## B

### 1

Having established that the defendant is entitled to be present for the district court's oral pronouncement of all discretionary conditions of supervised release, we now consider how district courts can satisfy this requirement. We agree with our sister circuits that the district court may satisfy the oral pronouncement requirement when imposing discretionary conditions of supervised release at the sentencing hearing in two different ways. The district court can recite each condition it elects to impose. Alternatively, where the defendant has been informed of the proposed conditions of supervised release in advance of sentencing, the court can incorporate those conditions by reference at the hearing. *See Diggles*, 957 F.3d at 560; *Matthews*, 54 F.4th

at 6 n.2; *see also United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004) (stating that "advance written notice" of supervised release conditions "work[s] best"). When the court states at the sentencing hearing in the presence of the defendant that it is incorporating by reference one or more discretionary conditions from a document or list provided to the defendant in advance of the hearing, the defendant has a meaningful opportunity to challenge those conditions. The court's oral incorporation by reference of this previously provided list or document would satisfy the due process requirement that the defendant be present during the critical stage of sentencing. Indeed, such a procedure gives the defendant "'far more opportunity to review and consider objections to those conditions' than defendants who hear about them for the first time when the judge announces them." *Diggles*, 957 F.3d at 560–61 (quoting *United States v. Bloch*, 825 F.3d 862, 872 (7th Cir. 2016)).

The court's oral incorporation by reference of conditions set forth in the presentence report at the sentencing hearing would generally meet this requirement. The presentence report is provided to the defendant in advance of the sentencing hearing, and the Federal Rules of Criminal Procedure require that "[a]t sentencing, the court . . . must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." FED. R. CRIM. P. 32(i)(1)(A); *see also United States v. Soltero*, 510 F.3d 858, 863 (9th Cir. 2007) (per curiam) (holding that a district court must be satisfied that the defendant has reviewed the presentence report and discussed it with counsel).[14] This ensures that the defendant

---

[14] Although a "district court need not specifically inquire whether a defendant has read the presentence report," *Soltero*, 510 F.3d at 863, we

has been informed of the proposed conditions of supervised release set forth in the presentence report, so that the district court's election to incorporate them by reference gives the defendant a meaningful opportunity to object to them.

Alternatively, "[a] document proposing conditions that a court orally adopts at sentencing may take a form other than" the presentence report, such as "courtwide or judge-specific standing orders that list conditions." *Diggles*, 957 F.3d at 561 & n.5. The proposed written notice of discretionary conditions of supervised release need not be in a particular type of document, so long as the defendant has a meaningful opportunity to challenge those conditions by being informed of the proposed conditions in advance and being given "an opportunity to review [them] with counsel," and the court orally "adopt[s] the written recommendations when the defendant is in court." *Id*. at 561 n.5.[15]

In sum, we hold that a district court must orally pronounce all discretionary conditions of supervised release in the presence of the defendant. We further hold that this pronouncement requirement is satisfied if the defendant is

---

have held that "for Rule 32([i])(1)(A) to be satisfied, the sentencing judge must 'reasonably rel[y] on evidence indicating that a defendant has read the presentence report and discussed it with counsel,'" *id*. (quoting *United States v. Lewis*, 880 F.2d 243, 246 (9th Cir. 1989)).

[15] Contrary to the dissent's contention, Dissent at 42, we do not exclude any particular method a district court may use in an effort to satisfy the incorporation by reference requirement. Because "[s]entencing is a case-by-case matter," *United States v. Defterios*, 343 F.3d 1020, 1023 (9th Cir. 2003), such a fact-specific inquiry should be addressed on a case-by-case basis. Here, the district court did not incorporate standard conditions of supervised release at Montoya's sentencing, so the question whether any specific method fails to satisfy this requirement is not before us.

informed of the proposed discretionary conditions before the sentencing hearing and the district court orally incorporates by reference some or all of those conditions, which gives the defendant an opportunity to object.**16**

2

Although incorporating the discretionary conditions of supervised release set forth in the presentence report (or some other list or document provided to the defendant in advance of the hearing) by reference is one means by which the district court can satisfy the requirement that it must orally pronounce a sentence in the presence of a defendant, this procedure is distinct from the procedural sentencing requirements set forth in Rule 32 of the Federal Rules of Criminal Procedure. Because the dissent conflates Rule 32 with the due process requirement that a sentence be orally pronounced in the defendant's presence (which can be satisfied through incorporation by reference), *see* Dissent at 36–38, we briefly explain the relevant provisions of Rule 32.

---

16 The dissent provides no support for its assertion that "a very large number" of cases currently on appeal will have to be remanded for resentencing consistent with our opinion. Dissent at 43. Rather, district courts in this circuit can continue to incorporate the presentence report by reference at sentencing, which they have done for decades. *See*, *e.g.*, *United States v. G.L.*, 143 F.3d 1249, 1252 (9th Cir. 1998) ("Incorporating by reference the relevant paragraphs of the Presentence Report, the court departed upward two offense levels . . . ."); *United States v. Avila*, 905 F.2d 295, 296 (9th Cir. 1990) ("The court incorporated by reference the presentence report . . . ."); *United States v. Gayou*, 901 F.2d 746, 747 (9th Cir. 1990) ("The district court incorporated the presentence report as a basis for its sentence."). Further, while this "new rule of criminal procedure applies to cases on *direct* review," it "does not apply retroactively . . . on federal *collateral* review." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1554, 1560 (2021).

District courts "'must consult [the] Guidelines and take them into account when sentencing,' even though they now have the discretion to impose non-Guidelines sentences." *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (alteration in original) (quoting *United States v. Booker*, 543 U.S. 220, 264 (2005)). Among other things, Rule 32 sets forth the procedures by which a probation officer can assist the district court in fulfilling this requirement by calculating the applicable Guidelines sentence. The probation officer does so by conducting a presentence investigation, *see* FED. R. CRIM. P. 32(c), and then preparing a presentence report that includes relevant factual information, as well as the probation officer's calculations regarding the proper application of the Guidelines to the defendant's offense, *see id*. 32(d). To ensure that "the district court . . . calculate[s] the Guidelines range accurately," *United States v. Mix*, 457 F.3d 906, 911 (9th Cir. 2006) (quoting *Cantrell*, 433 F.3d at 1280), Rule 32 gives the defendant an opportunity to comment on any errors in the presentence report's facts or calculations. The report must generally be provided to the defendant "at least 35 days before sentencing," FED. R. CRIM. P. 32(e)(2), and the defendant then has 14 days to object in writing to any "material information, sentencing guideline ranges, and policy statements contained in or omitted from the report," *id*. 32(f)(1). At sentencing, the district court "may accept any undisputed portion of the presentence report as a finding of fact," *id*. 32(i)(3)(A), but must rule on disputes regarding its factual assertions or calculations, *see id*. 32(i)(3)(B); *see also United States v. Dominguez-Caicedo*, 40 F.4th 938, 966 (9th Cir. 2022).

The district court is not bound by any sentencing recommendations provided by the presentence investigation

report, however. *See United States v. Herrera-Figueroa*, 918 F.2d 1430, 1435 (9th Cir. 1990) ("[T]he presentence report is not binding on the district court."). To the contrary, the district court may vary from the Guidelines range or impose certain types of conditions not previously identified in the presentence report. *See Wise*, 391 F.3d at 1032–33.[17] Thus, while a defendant can forfeit the right afforded by Rule 32 to object to factual assertions, *see Dominguez-Caicedo*, 40 F.4th at 966, or errors in the probation officer's calculation of the recommended sentencing range by failing to raise such objections within 14 days of receiving the presentence report, a defendant does not forfeit the right to object to the oral sentence itself when it is pronounced during the sentencing hearing, *see, e.g.*, *United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017) (describing how defense "counsel first raised the suspicionless search condition and objected to it at the sentencing hearing"), *as*

---

[17] We have interpreted Rule 32 as requiring, in some circumstances, that the district court give the defendant reasonable notice that it is considering imposing certain types of conditions not previously identified in the presentence report. We have held that while the district court need not provide advance notice when it intends to impose "a condition of supervised release that is contemplated by the [G]uidelines," *United States v. Lopez*, 258 F.3d 1053, 1055 (9th Cir. 2001) (emphasis omitted), it must do so "[w]here a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing [G]uidelines . . . so that counsel and the defendant will have the opportunity to address personally its appropriateness," *Wise*, 391 F.3d at 1033. This requirement of advance notice before the district court imposes an unlisted condition of supervised release is not related to the requirement that the court make an oral pronouncement of the sentence (which can be satisfied through incorporation by reference) in the defendant's presence. Here, Montoya does not argue that she was entitled, under Rule 32, to advance notice of the conditions of supervised release imposed in this case.

*amended on denial of reh'g and reh'g en banc* (Sept. 12, 2017).  "The operative principle is that the objection need not be made before the grounds are reasonably known," *United States v. Gallant*, 306 F.3d 1181, 1187 (1st Cir. 2002), and the defendant cannot reasonably know what discretionary conditions of supervised release the district court is imposing as part of the sentence until the conditions are orally pronounced at sentencing.  As a result, when the district court satisfies the oral pronouncement requirement by incorporating conditions by reference from the presentence report, Rule 32 is not implicated.

Furthermore, because a defendant does not forfeit the right to challenge the sentence pronounced at the sentencing hearing, *a fortiori*, the defendant does not forfeit the right to challenge the district court's failure to pronounce part of the sentence orally.  Where the district court attempts to satisfy this requirement by incorporating a previously provided list of discretionary conditions by reference, a defendant does not forfeit the right to object that the incorporation by reference is defective, regardless whether the document purported to be incorporated is a presentence report or some other document.  The requirement, under the Due Process Clause, that the sentence be imposed orally in the presence of the defendant is distinct from Rule 32's requirements for objecting to factual assertions and sentencing range calculations in the presentence report.

III

We now apply these principles to Montoya's case. Montoya was entitled to challenge the imposition of the standard conditions of supervised release that were subsequently included in her written judgment because they are discretionary.  Thus, she had the due process right to be

present during their pronouncement. Because the district court did not orally pronounce them either by reading the applicable conditions at sentencing or by incorporating them by reference in her presence, Montoya's due process right to be present at the critical stage of sentencing was violated. Therefore, we must remand to the district court. *See* 18 U.S.C. § 3742(f)(1) ("If the court of appeals determines that . . . the sentence was imposed in violation of law . . . , the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate.").

Contrary to the dissent's assertion, Montoya did not forfeit her right to object to the standard conditions, even though the presentence report recommended their imposition. Dissent at 34, 37. Such recommendations were not binding on the district court, *see Herrera-Figueroa*, 918 F.2d at 1435, and did not constitute "the actual oral pronouncement [of the sentence] in the presence of the defendant," *Aguirre*, 214 F.3d at 1125–26 (quoting *Munoz-Dela Rosa*, 495 F.2d at 256). A defendant's ability to make anticipatory objections does not satisfy a defendant's due process right to be present when discretionary conditions are orally pronounced. The dissent's argument that Montoya was required "to raise any objections to the standard conditions *prior* to the imposition of sentence," Dissent at 33–34, is unsupported by any authority. Rather, our caselaw indicates that defendants may object to the imposition of conditions of supervised release for the first time at their sentencing hearings. *See United States v. Quinzon*, 643 F.3d 1266, 1268 (9th Cir. 2011); *see also United States v. Apodaca*, 641 F.3d 1077, 1080 (9th Cir. 2011) (noting that the court modified conditions of supervised release recommended in the presentence report based on objections

raised by defense counsel at the sentencing hearing). Here, Montoya was given no opportunity to object, because the district court neither pronounced the standard conditions of supervised release on the record nor incorporated them by reference to the presentence report.

We also reject the dissent's argument that Montoya's due process right to be present at sentencing was not violated because *Napier* stated that the court's imposition of standard conditions "is deemed to be implicit in an oral sentence imposing supervised release." Dissent at 29–30 (citing *Napier*, 463 F.3d at 1043). Because the standard conditions are discretionary, our prior judicial ruling that such conditions are "implicit" in a sentence does not mandate their inclusion in every sentence.[18] Thus, Montoya would not know during the sentencing proceeding itself whether the district court had "implicitly" included them in her sentence. Indeed, in this case, she did not learn that the court had done so until she received the written judgment, so she had no meaningful opportunity to defend against their imposition. Therefore, Montoya was deprived of her due process right to be present for sentencing—in her case, the oral pronouncement of discretionary conditions of supervised release—regardless of our statement in *Napier*. *Cf.* Dissent at 38–40.[19]

---

[18] As we have explained, *see supra* pp. 16–17, *Napier* erred in stating that standard conditions of supervised release are "necessarily included" in an oral sentence. 463 F.3d at 1043. Such conditions are *not* necessarily included in every sentence, and therefore are not necessarily imposed at sentencing if not orally pronounced.

[19] We thus reject the dissent's argument that our decision today should not apply retroactively to sentences imposed "while *Napier* was on the books." Dissent at 39–40 & n.3. This argument is doubly mistaken

Our conclusion raises a question about the appropriate scope of remand.  We have held that "the power to remand for resentencing necessarily encompasses the lesser power to order a limited remand," and that "appellate courts are not precluded from limiting the scope of issues on remand." *United States v. Ameline*, 409 F.3d 1073, 1079–80 (9th Cir. 2005) (en banc).  We have taken different approaches in cases where supervised release conditions that were not orally pronounced appeared in a written judgment.  For example, in *Reyes*, "we exercise[d] our discretion to vacate the entirety of the supervised release portion of [a defendant's] sentence and . . . remand[ed] to the district court for the limited purpose of imposing a new supervised release sentence." 18 F.4th at 1139.  In other cases where one or more conditions were deemed wrongfully imposed, we exercised our discretion to vacate only a particular portion of the supervised release sentence. *See, e.g.*, *United States v. Blinkinsop*, 606 F.3d 1110, 1123 (9th Cir. 2010) (vacating a supervised release sentence only as to two special conditions and ordering a "limited remand"); *see also Soltero*, 510 F.3d at 867 (remanding "to the district court for it to excise [a] portion of [a] [c]ondition . . . from [the defendant]'s set of supervised release conditions"); *United States v. Stephens*, 424 F.3d 876, 884 (9th Cir. 2005).

In this case, the limited remand approach is appropriate. We vacate only the conditions of supervised release that were referred to as the "standard conditions" in the written sentence but were not orally pronounced.  Remand is

---

because "[c]ourts must apply judicial decisions announcing new interpretations of criminal procedural rules 'retroactively to all cases, state or federal, pending on direct review or not yet final.'" *Reyes v. Garland* (*Reyes II*), 11 F.4th 985, 991 (9th Cir. 2021) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).

required so that the district court can cure its error by orally pronouncing any of the standard conditions of supervised release that it chooses to impose and by giving Montoya a chance to object to them. Because the failure to pronounce those conditions is the only sentencing error—the district court made adequate findings supporting the reasonableness of the custodial sentence and properly imposed the mandatory conditions and orally pronounced special conditions—we exercise our discretion "to remand to the district court for the limited purpose of" reconsidering the supervised release conditions we have vacated herein. *Reyes*, 18 F.4th at 1139. Each party shall bear its own costs on appeal. *See United States v. Evans*, 883 F.3d 1154, 1164–65 (9th Cir. 2018); *see also* FED. R. APP. P. 39(b).

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**

COLLINS, Circuit Judge, dissenting:

In setting new rules about how federal sentencings in this circuit should be conducted, the majority misapplies the due process principles on which its decision is based, casts doubt on the validity of a potentially large number of criminal sentences, and sows confusion about what exactly district courts must do, going forward, to comply with the majority's ruling. I respectfully dissent.

**I**

Under the current federal sentencing statute, a sentence of imprisonment will ordinarily include "a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). Congress has, by statute, specified that the supervised release of all defendants (or of particular categories of defendants) shall be subject to certain mandatory conditions, such as (for all defendants) the condition that, during the term of supervised release, the defendant must "not commit another Federal, State, or local crime." *Id*. § 3583(d). In addition, a district court may impose additional conditions after considering various factors, including the "nature and circumstances of the offense and the history and characteristics of the defendant," as well as any relevant guidelines or policy statements issued by the Sentencing Commission. *Id*. § 3553(a)(1), (a)(4)–(5); *see also id*. § 3583(c).

The Sentencing Commission has addressed the subject of supervised release conditions in § 5D1.3 of the U.S. Sentencing Guidelines. Subsection (a) lists the potential mandatory conditions that may apply; subsection (c) lists a set of "standard conditions" that, while discretionary, are recommended to be used in every case; and subsection (d)

provides guidance in crafting "special conditions" and lists several types of conditions that might be appropriate in particular kinds of cases. The Guidelines' "standard conditions" are largely focused on ensuring that, during the term of supervised release, the probation officer assigned to the defendant's case will have the tools necessary to effectively supervise the defendant. Thus, for example, the standard conditions address various obligations to report to the probation officer, to answer truthfully questions posed by the probation officer, to allow home visits by the probation officer, and to seek the probation officer's approval for certain actions (such as leaving the district or changing living arrangements). *See* U.S.S.G. § 5D1.3(c). The pre-printed national standard form that is provided by the Administrative Office of the U.S. Courts for entering "Judgment in a Criminal Case" (Form "AO 245B") contains the most common mandatory conditions listed in § 5D1.3(a) and *all* of the standard conditions listed in § 5D1.3(c).

The question presented in this case concerns the pronouncement of a criminal sentence and, specifically, what district courts must do, at sentencing, in describing the conditions of supervised release. In *United States v. Napier*, 463 F.3d 1040 (9th Cir. 2006), we held that the "mandatory and standard conditions" of supervised release described in U.S.S.G. § 5D1.3 are "deemed to be implicit in an oral sentence imposing supervised release," even if the district court does not orally mention those conditions at the sentencing. *Id*. at 1043. Thus, under *Napier*, a district court's oral statement that the defendant is subject to a term of "supervised release" automatically incorporates the mandatory and standard conditions, absent a contrary statement from the court. At Defendant Cynthia Montoya's sentencing, the district court imposed a term of "supervised

release" but did not orally mention either the mandatory or the standard conditions. In accordance with *Napier*, the written judgment nonetheless included those conditions. On appeal, Montoya contends—and the majority now agrees— that her due process rights were violated when the standard conditions were not orally pronounced at her sentencing. In my view, Montoya's sentencing fully comported with due process.

## II

I agree with the majority that, under the Due Process Clause and Federal Rule of Criminal Procedure 43, a district court must orally pronounce its sentence in the defendant's presence. *See* Opin. at 9–10; *see also United States v. Aguirre*, 214 F.3d 1122, 1125 (9th Cir. 2000); FED. R. CRIM. P. 43(a)(3). There are at least two respects in which this presence requirement may implicate a defendant's due process rights. First, the requirement ensures that the defendant has a sufficient opportunity to be heard with respect to any discretionary aspects of the sentence, including standard or special conditions of supervised release. Second, the requirement helps to ensure that the defendant is adequately informed, through the solemn act of directly addressing the defendant in person in the courtroom, as to what exactly the sentence is. Neither aspect of Montoya's presence rights was infringed in this case.

## A

The record overwhelmingly confirms that Montoya had ample opportunity to object to the imposition of the standard conditions in her case. Accordingly, there was no violation of her due process rights on such a theory.

We have previously held—and the majority reaffirms, *see* Opin. at 22 n.17—that a defendant need *not* be given advance notice that the district court is considering imposing, as a condition of supervised release, one of the conditions that are expressly "listed in the discretionary conditions of supervised release in the guidelines." *United States v. Wise*, 391 F.3d 1027, 1032 (9th Cir. 2004) (citing *United States v. Lopez*, 258 F.3d 1053, 1055–56 (9th Cir. 2001)). As *Wise* explains, because "all defendants have notice" of the discretionary conditions that are listed in the Guidelines, the mere fact of such listing *alone* puts defendants on notice that such conditions may be on the table at sentencing. *Id*. at 1032; *see also Lopez*, 258 F.3d at 1056 (holding that "all defendants are alerted" to the discretionary conditions listed in the Guidelines and therefore need not be given advance notice before such a condition is imposed at sentencing). Indeed, *Lopez* reached that conclusion with respect to a "special"—*i.e.*, non-standard—discretionary condition that is expressly identified in the Guidelines as one that district courts should consider in appropriate cases. *See Lopez*, 258 F.3d at 1055–56 (holding that no advance notice was required before the district court imposed a condition that the defendant receive mental health treatment, which is a special condition listed in § 5D1.3(d)(5) of the Guidelines). The same is doubly true for the Guidelines' "standard" conditions, which *Wise* noted are those that the Guidelines recommend "should *always* be included." *Wise*, 391 F.3d at 1032 & n.9 (emphasis added). Accordingly, the Guidelines' express recommendation that these conditions be imposed in *every* case provides ample notice to defendants that such conditions may be imposed in their individual cases.

Here, in addition to the *constructive* notice of the standard conditions that *Wise* and *Lopez* recognize as fully

sufficient, Montoya also received *actual* notice that the standard conditions were being considered in her case. In accordance with Federal Rule of Criminal Procedure 32(c)(1)(A) and 18 U.S.C. § 3552(a), the probation officer prepared a presentence report ("PSR") for Montoya's case. Because there is no "local rule" or "order in the case" directing that the probation officer's sentencing recommendation be submitted confidentially to the court, that recommendation was included in Montoya's PSR. *See* FED. R. CRIM. P. 32(e)(3). With respect to the issue of supervised release conditions for Montoya, the probation officer explicitly recommended in the PSR that the district court impose "the mandatory and standard conditions of supervision," as well as four special conditions that were set forth verbatim. There can be no doubt as to what those recommended "standard conditions" were and that Montoya is therefore doubly charged with knowledge of them. Montoya had counsel; her counsel was required under Rule 32 to read and discuss the PSR with her, *see* FED. R. CRIM. P. 32(i)(1)(A); and he affirmatively stated at the sentencing that he had done so. Her counsel could not reasonably have had any doubt as to what the phrase "standard conditions" means, because that phrase unmistakably refers to the longstanding and familiar "standard conditions" that are set forth in § 5D1.3(c) of the Guidelines. Indeed, as I have noted, those standard conditions come pre-printed on the national standard form that is used to prepare written judgments in federal criminal cases—a form that any experienced federal criminal defense attorney has seen innumerable times. If Montoya's attorney failed to go over the standard conditions with her and she can show prejudice from that, she might conceivably have an ineffective assistance of counsel claim. But the PSR's use of the phrase

"standard conditions" provides fully sufficient actual notice as to exactly what conditions are being referenced in the PSR.

Moreover, having been explicitly informed that the PSR recommended imposition of the "standard conditions" of supervised release, Montoya then had the concomitant obligation to object to any of those conditions that she thought were unwarranted in her case. *See* FED. R. CRIM. P. 32(f)(1) (requiring the parties, "[w]ithin 14 days after receiving the presentence report," to "state in writing any objections"). Montoya filed a detailed sentencing memorandum addressing the calculation of her sentencing guidelines range and suggesting various grounds for downward departure and variance from the guidelines range, but she did not otherwise file any objections to the PSR. If Montoya had thought that the PSR's reference to "standard conditions" was unclear, she could have raised that objection, but she did not. Thereafter, at sentencing, Montoya's counsel had the further opportunity to "comment on the probation officer's determinations and other matters relating to an appropriate sentence." *See* FED. R. CRIM. P. 32(i)(1)(C). However, Montoya did not raise *any* objection to any of the conditions recommended in her PSR, including the special ones, in either her sentencing memorandum or in her or her counsel's comments prior to the imposition of sentencing. Indeed, even now, Montoya has articulated no substantive objections to any of the standard conditions. Opin. at 6–7 n.6. By failing to raise any objections to the standard conditions *prior* to the imposition of sentence,

Montoya forfeited any *substantive* objection to those conditions.[1]

The majority nonetheless says that Montoya's wholesale failure to raise any objection to the standard conditions prior to the imposition of sentence did *not* result in any such forfeiture of substantive objections. *See* Opin. at 24 ("Montoya did not forfeit her right to object to the standard conditions, even though the presentence report recommended their imposition."). The majority suggests that Rule 32(f)(1)'s obligation to file written objections to the PSR only extends to the PSR's "factual information" and its "calculations" concerning the Guidelines range, and therefore does not extend to any other matters, such as the PSR's recommendations concerning conditions of supervised release. *See* Opin. at 21. The majority's theory is apparently that the obligation of defendants to raise objections to the PSR's recommendations extends only to those matters as to which the district court must make specific findings under Rule 32(i)(3)(B). *See* Opin. at 21–22; *see also United States v. Petri*, 731 F.3d 833, 841 (9th

---

[1] By contrast, a *procedural* error that occurs in the course of the court's actual imposition of sentence cannot be known before it occurs, and so the obligation to object to it does not arise until it occurs. *See United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 & n.3 (9th Cir. 2010) (applying plain error to procedural objection in light of failure to object after imposition of sentence and holding that earlier substantive objections to sentence did not preserve an objection to the procedural error); *see also United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("[W]e now hold that a defendant must raise any procedural objection to his sentence at the time the procedural error is made, *i.e.*, when sentence is imposed without the court having given meaningful review to the objection."). I address the issue of alleged procedural error in the pronouncement of sentence separately below. *See infra* section II(B).

Cir. 2013) (holding that "[o]nly specific factual objections
trigger Rule 32(i)(3)(B)," and that a "specific factual
objection addresses a factual inaccuracy; it does not merely
object to recommendations, opinions, or conclusions"). But
whether the obligation is imposed by Rule 32(i)(3)(B) itself
or by 18 U.S.C. § 3583(d), a district court at sentencing *must*
set the conditions of supervised release, and it is an odd
reading of the rules to declare that this is a unique area in our
adversarial system in which the parties have no obligation,
prior to the court's ruling, to inform the court of the parties'
positions as to a matter on which the court *must* rule. It is
apparently now the law in our circuit that, when it comes to
conditions of supervised release—even ones specifically
recommended by the probation office or the Government—
defendants can simply sit on their hands, wait for the district
court's imposition of sentence, and only *then* start the
process of raising objections. This backwards view of
sentencing procedure is quite wrong. The oral imposition of
sentence is supposed to be the *end* of the process, and it is
only in exceptional cases (such as where the district court
commits an unexpected error in pronouncing the sentence)
that the issue of post-sentencing objections properly arises.
*See generally* 3 CHARLES ALAN WRIGHT AND SARAH N.
WELLING, FEDERAL PRACTICE AND PROCEDURE § 540 (5th
ed. 2022); *see also supra* note 1.**[2]**

---

[2] The two cases cited by the majority do not remotely support its novel
view that an objection to the standard conditions may be raised for the
first time *after* sentence has been orally imposed. Instead, in both cases,
the defendant raised objections to the relevant conditions *before* the
imposition of sentence. *See United States v. Quinzon*, 643 F.3d 1266,
1268 (9th Cir. 2011) (noting that, prior to the imposition of sentence, the
defendant objected, at the sentencing hearing, to the imposition of a
special computer-use condition that had been mentioned in his plea

Against this backdrop, the majority's assertion that "Montoya was given no opportunity to object" to the imposition of the standard conditions is demonstrably false. *See* Opin. at 25. It is unfathomable to me how the majority can say that, merely because the district court did not specifically mention the "standard conditions" of supervised release in its oral sentence, Montoya therefore "had no meaningful opportunity to defend against their imposition." *See* Opin. at 25. As I have explained, given that the standard conditions are always on the table at sentencing and given the probation officer's express recommendation that the standard conditions be imposed, Montoya had ample opportunity to object to the imposition of the standard conditions. She simply chose not to do so. On this record, Montoya cannot be said to have suffered a due process violation based on the theory that she was somehow

---

agreement); *United States v. Apodaca*, 641 F.3d 1077, 1080 (9th Cir. 2011) (noting that the district court adopted the conditions of supervised release, including the challenged special condition, after considering the probation office's presentence report, an addendum filed by the probation office after receiving the parties' positions, and objections raised by the defendant at the sentencing hearing); *see also* Answering Brief of the United States, *United States v. Apodaca*, 2010 WL 5483888, at \*7 (noting that, in his written sentencing memorandum filed in advance of sentencing, "Defendant also objected to the majority of supervised release conditions recommended by the probation officer"). To the extent that the defendant in *Quinzon* did not raise any specific objections to the probation office's recommended conditions in that case, that is attributable to the fact that "the probation officer's recommended conditions of supervised release were transmitted to the court in a separate, confidential letter and not disclosed to the parties." 643 F.3d at 1268; *see also* FED. R. CRIM. P. 32(e)(3) (granting district courts the option to receive such recommendations confidentially). The majority's position that objections to the standard conditions need not be made in advance of the oral imposition of sentence is, to quote the majority's own words, "unsupported by any authority." *See* Opin. at 24.

deprived of the opportunity to object to the standard conditions.

Moreover, the majority's holding on this score reveals a fundamental disconnect between the facts of this case and the majority's due process theory. As the majority explains, the Due Process Clause protects a "right to be present during the oral pronouncement of conditions of supervised release" only "to the extent '[the defendant's] presence has a relation, reasonably substantial, to the fullness of his [or her] *opportunity to defend against' the condition*." *See* Opin. at 13 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934) (emphasis added)). That is why, according to the majority, there is no due process violation if *mandatory* conditions are imposed in the written judgment without having been pronounced in the defendant's presence: because "a defendant cannot defend against them," a "defendant's presence during the oral pronouncement of mandatory conditions 'would be useless, or the benefit but a shadow.'" *See* Opin. at 13-14 (quoting *Snyder*, 291 U.S. at 106–07). I do not see why the same logic would not apply to standard conditions *as to which the defendant has forfeited any objection*. In that situation, just as in the mandatory-condition scenario, the defendant has no practical ability to defend against the condition, and the benefit of presence is, to that extent, "but a shadow." By the time that the sentence was being orally pronounced in this case, Montoya had forfeited any objections to the standard conditions, and she therefore could no longer "defend against them." *See* Opin. at 13-14.

It follows from the foregoing that, to the extent that Montoya suffered a violation of her due process right to be present for the actual oral pronouncement of supervised release conditions in this case, it must be rooted in something

other than the theory that Montoya was deprived of a meaningful opportunity to object.

**B**

The only potential remaining due-process-based objection, it seems, would be if the oral pronouncement of the sentence failed to adequately inform the defendant of the sentence, thereby causing the defendant to reasonably believe, upon leaving the courtroom, that the sentence is something different from what was later shown in the written judgment. But on this record, any such claim is untenable.

I agree with the majority that, in orally pronouncing that the standard conditions are being included as part of a supervised-release sentence, a district court is not required to recite any magic words, nor is it required to undertake the laborious task of orally reciting them verbatim. The court may, for example, incorporate by reference a written list provided in advance, including a list contained in the PSR or in "courtwide or judge-specific standing orders." *See* Opin. at 19 (citation omitted).

But in my view, that example is not the *only* way in which the district court can, by its oral pronouncement, adequately communicate to the defendant and her counsel what conditions of supervised release have been imposed. If, for example, a local rule or standing order stated that, unless the district court states otherwise in imposing sentence, the court's imposition of a term of "supervised release" shall be deemed to include the mandatory and standard conditions, that would also be sufficient. Under such a regime, everyone would be on notice that, by using the phrase "supervised release," the district court was automatically imposing the mandatory and standard

conditions.  The phrase "supervised release" would itself be a shorthand for that basic package of conditions.

That is effectively the regime that has existed in this circuit at least since our decision in *Napier*, and until its abrogation today.  *Napier* announced that, merely by orally imposing a term of "supervised release," the district court would be understood as having imposed the mandatory and standard conditions, because *Napier* "deemed" those conditions "to be implicit in an oral sentence imposing supervised release."  463 F.3d at 1043.  The *Napier* court may have been unwise to adopt that rule, and I have no particular remorse over its demise today.  But during the time that *Napier* remained good law, it formed the backdrop for how to understand an oral imposition of a term of "supervised release" in this and every other post-*Napier* sentencing in this circuit.  Consequently, when the district court orally imposed a term of "supervised release" in Montoya's case, that statement must be understood as a shorthand that incorporates the mandatory and standard conditions.  That shorthand will no longer be available after today's decision, but the *factual* meaning of the district court's oral sentence, which occurred while *Napier* was on the books, was sufficiently clear at the time it was rendered.**3**

---

3 The majority is therefore wrong in contending (*see* Opin. at 25–26 n.19) that my position somehow involves a departure from the principle that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."  *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).  That newly announced rules of law must be applied retroactively to the facts of non-final cases provides no warrant for rewriting the *facts* of those cases.  What a reasonable person would have understood was meant by the phrase "supervised release" when it was uttered at

Accordingly, the district court's oral sentence adequately informed Montoya and her counsel that the standard conditions were being imposed.  At the conclusion of the sentencing, Montoya could not reasonably have been misled as to what sentence was just imposed, and her right to presence was not violated.  Accordingly, there was no due process violation under this theory either.[4]

## III

In addition to being substantively wrong, the disruptive implications of today's decision may be quite significant.

### A

The majority opinion expressly endorses only certain specific methods for handling the oral pronouncement of supervised release conditions in light of today's decision, and in doing so it pointedly fails to endorse additional alternatives that have been recognized as acceptable by other circuits.    The disparity creates a substantial cloud of uncertainty in an area in which clarity is vital.

The majority agrees that it would be acceptable for a district court to "recite each condition it elects to impose." *See* Opin. at 17.  But no district court would ever want to do that, because the full recitation of the blizzard of words

---

Montoya's 2020 sentencing can only be understood in light of the then-current rules about what the use of that term signified.

[4] Finally, there can be no contention here that, even if Montoya's due process rights were not violated, her broader right to presence under Rule 43(a)(3) was nonetheless infringed.    Any such purely rule-based violation "is harmless if 'there is no reasonable possibility that prejudice resulted from the absence.'"   *United States v. Berger*, 473 F.3d 1080, 1094 n.2 (2007).  For the same reasons I have explained, any error here would be deemed harmless.

contained in the standard and mandatory conditions would be tediously laborious for all involved. It is therefore critical, as a practical matter, to know exactly what other, more realistic, alternatives would be acceptable. The majority expressly blesses only one other option—namely, providing the full list of proposed supervised release conditions to the defendant "*in advance of sentencing*" and then "incorporat[ing] those conditions by reference at the hearing." *See* Opin. at 17 (emphasis added); *see also* Opin. at 18–20, 23 (stating that the list must be "previously provided" or given "in advance" or "before the sentencing hearing"). Thus, even as the majority reaffirms our caselaw stating that advance notice of conditions listed in the Guidelines (standard or special) need not be provided, such advance notice is the *only* safe harbor announced in the majority's opinion.

The majority notably does not say whether, as some courts have indicated, it would suffice if the presentence report contains a one-line reference to the "standard conditions" and the court then simply states at the sentencing that it is imposing the "standard conditions." *See United States v. Martinez*, 15 F.4th 1179, 1180–81 (5th Cir. 2021) (noting that the referent of "standard conditions" was clear in light of a local standing order); *see also United States v. Matthews*, 54 F.4th 1, 6 & n.2 (D.C. Cir. 2022) ("For example, a district court may satisfy the pronouncement requirement by referencing and adopting the conditions recommended in a presentence report or by simply saying that it is imposing the 'standard' conditions."). I can see no reason why it would not suffice, for example, to say that "the court imposes the standard conditions listed in the Guidelines." No one could reasonably feign ignorance as to what those conditions were.

The majority nonetheless declines to address whether these alternatives would also be acceptable, saying that it raises a "fact-specific inquiry [that] should be addressed on a case-by-case basis." *See* Opin. at 19 n.15. As a practical matter, however, the majority's opinion effectively answers the question in the negative. The majority is willing to endorse, up front, the option of providing an advance written list and then incorporating that list at sentencing. But when it comes to simply cross-referencing the Guidelines' list of standard conditions *without* having provided an advance list, the majority says that the viability of *that* option turns on the specific facts of the case. Moreover, in upholding its advance-notice option, the majority says that it works only "*so long as*" the record shows that the defendant has been "informed of the proposed conditions in advance" and been "given an opportunity to review them with counsel." *See* Opin. at 19 (emphasis added) (simplified). These requirements, if taken seriously, exclude the other options I have described. Indeed, because there is currently only a requirement in the federal rules to "verify that the defendant and the defendant's attorney have read and discussed *the presentence report and any addendum to the report*," *see* FED. R. CRIM. P. 32(i)(1)(A) (emphasis added), the majority's reasoning might exclude any option for advance provision of the list *other* than the presentence report, unless perhaps the court makes a specific inquiry as to whether a list of conditions that has been provided in some other form has been reviewed by the defendant and counsel.

The practical effect of the majority's decision will thus be to require that a written list of conditions be supplied in advance and that an inquiry be made as to whether the defendant has reviewed it with counsel. That may be a sound proposal that the Advisory Committee on the Criminal Rules

could consider adding to Rule 32, but it seems difficult to say that due process requires it.

**B**

In addition to being unwarranted, today's decision threatens to result in substantial—and utterly pointless— costs. District courts in our circuit impose literally thousands of sentences each year, and it is a safe bet that, in light of *Napier*, a very large number of them have not complied with the requirements set forth in today's opinion. The majority attempts to limit the damage by declaring in advance that what I will refer to as "*Montoya* errors" do not provide grounds for a collateral attack on an already final sentence. *See* Opin. at 20 n.16. But for the many cases currently on appeal, the impact of today's decision could be quite significant. In every such case in which the district court relied on *Napier*'s shorthand, the defendant can now raise the *Montoya* issue for the first time on appeal, given that, under the majority's decision, that is the first time the defendant had "any real opportunity to object." *See* Opin. at 7 (citation omitted). The result may be many comparable remands in other cases, each of which will require an in-person hearing—which will require, for currently incarcerated defendants, physical transportation back to the sentencing district court—and all for the limited purpose of briefly asking the defendant in person whether he or she has reviewed the list of standard conditions with counsel before the court then orally adopts that list by cross-reference. Neither due process nor common sense require such a result.

I respectfully dissent.